UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| SANDRA K. WINTERS, | ) | CASE NO. 3:17CV1102 |
| Plaintiff, | ) ) | |
| v. | ) ) | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| NANCY A. BERRYHILL[1], ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) ) | MEMORANDUM OPINION AND ORDER |
| Defendant. | ) ) | |

Plaintiff Sandra K. Winters ("Plaintiff") requests judicial review of the decision of the Commissioner of Social Security Administration ("Defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1. In her brief on the merits, filed on September 5, 2017, Plaintiff asserts that the administrative law judge ("ALJ") erred by failing to find a severe mental impairment. ECF Dkt. #12. Defendant filed a response brief on October 4, 2017. ECF Dkt. #15. Plaintiff filed a reply brief on October 18, 2017. ECF Dkt. #16.

For the following reasons, the Court AFFIRMS the decision of the ALJ and dismisses the instant case in its entirety with prejudice.

## I.   **FACTUAL AND PROCEDURAL HISTORY**

Plaintiff field applications for DIB and SSI in April 2014 alleging a disability onset date of February 21, 2013. ECF Dkt. #11 ("Tr.") at 201-13.[2] These claims were denied initially and upon reconsideration. *Id.* at 126-36. Plaintiff then requested a hearing before an ALJ, which was held on December 16, 2015. On February 18, 2016, the ALJ issued a decision concluding that Plaintiff

---

[1]On January 23, 2017, Nancy A. Berryhill became the acting Commissioner of Social Security, replacing Carolyn W. Colvin.

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed in the CM/ECF system rather than the page numbers assigned when the Transcript was compiled. This allows the Court and the parties to easily reference the Transcript as the page numbers of the .PDF file containing the Transcript correspond to the page numbers assigned when the Transcript was filed in the CM/ECF system.

was not disabled. *Id.* at 20. Subsequently, the Appeals Council denied Plaintiff's request for review. *Id.* at 1. Accordingly, the decision issued by the ALJ on February 18, 2016, stands as the final decision.

The instant suit was filed by Plaintiff on May 25, 2017. ECF Dkt. #1. Plaintiff filed a brief on the merits on September 5, 2017. ECF Dkt. #12. Defendant filed a response brief on October 4, 2017. ECF Dkt. #15. Plaintiff filed a response brief on October 18, 2017. ECF Dkt. #16.

## II. SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

On February 18, 2016, the ALJ issued a decision finding that Plaintiff was not disabled. Tr. at 20. The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2018. *Id.* at 25. Continuing, the ALJ stated that Plaintiff had not engaged in substantial gainful activity since February 21, 2013, the alleged onset date. *Id.* The ALJ determined that Plaintiff had the following severe impairments: recurrent pericardial effusion; degenerative disc disease; fibromyalgia; hypertension; and headaches. *Id.* Next, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 27.

After consideration of the record, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following additional limitations: occasionally lift or carry twenty pounds and frequently carry ten pounds; stand or walk for six hours in an eight-hour workday; sit for six hours in an eight-hour workday. Tr. at 28. The ALJ then found that Plaintiff was capable of performing past-relevant work as a primer assembler and that this work did not require the performance of work-related activities precluded by Plaintiff's RFC. *Id.* at 30. For these reasons, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from February 21, 2013, the alleged onset date, through the date of the decision. *Id.*

## III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (internal citations omitted).

## V. LAW AND ANALYSIS

Plaintiff asserts that the ALJ erred in failing to find a severe mental impairment and that this finding is not supported by substantial evidence. ECF Dkt. #12 at 8. Additionally, Plaintiff asserts that the ALJ's error was not harmless because even a modest limitation on Plaintiff's ability to handle the stress and complexity of her past relevant work is disabling. *Id.* Plaintiff asserts that step two of the sequential analysis is a *de minimis* hurdle in the disability determination process. *Id.* at 9. Continuing, Plaintiff states that "[i]n this case, all sources who offered an opinion, including the consultative examiner and [s]tate agency reviewing physicians, found limitations inconsistent with a severe mental impairment." *Id.* After summarizing these opinions, Plaintiff states that the ALJ gave these opinions little weight but the "analysis focused only on the identified social limitations." *Id.* at 10.

Specifically, Plaintiff indicates that the ALJ did not mention that Karen Steiger, Ph.D., a state agency reviewer, stated that Plaintiff was limited to routine tasks. ECF Dkt. #12 at 10. Plaintiff also states that the ALJ did not address that Jamie Lai, Psy.D., a state-agency reviewer, indicated that she was limited to routine tasks in a static environment with only minor, gradual change. *Id.* Continuing, Plaintiff states that the ALJ did not address the opinion of Taylor Groneck, Psy.D., a consultative examiner, insofar as it concerned "the effect of stress on [Plaintiff's] experience of

-4-

pain." *Id.* at 10-11. According to Plaintiff, the ALJ's rationale for rejecting this opinion evidence concerning her social functioning was improper. *Id.* at 11. Plaintiff states that while it is true that she did not seek treatment from a psychiatrist, she reported her symptoms to her primary care physician and pain management physician. *Id.* (citing Tr. at 310, 320, 324, 332, 339, 499, 500, 828, 831, 844, 847, 851). Further, Plaintiff states that she was prescribed an antidepressant but she did not see any significant improvement after a few weeks. *Id.*

Continuing, Plaintiff claims that her examination with Dr. Groneck was not "normal," as the ALJ stated because the findings included "depressed/anxious appearance, restricted affect, and limited energy." Tr. at 12. Plaintiff asserts that there is no evidence that the ALJ considered her depression and anxiety beyond step two of the sequential evaluation and that the applicable regulations do not allow an ALJ to ignore an impairment merely because it is not severe. *Id.* Finally, Plaintiff avers that the ALJ erred by failing to find a severe impairment in contradiction to all of the opinion evidence and that she would be unable to perform her past-relevant work if limited to a static work requirement, as described by Dr. Lai. *Id.* at 12-13.

Defendant contends that substantial evidence supports that ALJ's step two finding regarding depression/anxiety. ECF Dkt. #15 at 6. Specifically, Defendant asserts that the ALJ used the "special technique" when assessing the severity of Plaintiff's alleged mental impairments, and that Plaintiff did not acknowledge or challenge this process. *Id.* Defendant states that Plaintiff had a two-part burden at step two, namely: (1) that she had a medically determinable impairment; (2) which significantly limited her ability to perform basic work activities. *Id.* at 7. Continuing, Defendant states that Plaintiff met the first part of the test, but failed to meet the second part because she did not show that her depression and anxiety resulted in mental work-related limitations. *Id.*

Defendant asserts that Plaintiff's challenge to the ALJ's step-two finding overlooks the ALJ's discussion of the special technique, which is found at 20 C.F.R. § 404.1520a(c)(3), (d)(1) and 20 C.F.R. § 416.920a(c)(3). ECF Dkt. #15 at 7. Continuing, Defendant states that under the special technique the ALJ analyzes Plaintiff's ability to perform in four general domains: daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Id.* Defendant states that an impairment must be found non-severe when a claimant has no more than mild

limitations in any of the four domains that form the special technique. *Id.* at 8 (citing 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1)). Next, Defendant states that the ALJ found that Plaintiff did not have any mental limitation in her daily activities, and notes that Plaintiff: cared for her mother; made breakfast; performed household chores such as cleaning dishes, washing laundry, and caring for a pet cat; cleaned her work space; drove; shopped in stores; paid bills; read; gardened; shopped for antiques; and had hired help for cleaning, but did not describe any mental difficulties with her activities. *Id.*

Regarding social functioning, Defendant states that the ALJ found only a mild restriction and noted that Plaintiff met friends for lunch, shopped at the farmer's market, and went to the library. ECF Dkt. #15 at 9. Defendant indicates that the ALJ also found only a mild limitation in the domain of concentration, persistence, or pace, and states that Plaintiff was observed to have average to high-average intelligence, good memory, and coherent thoughts/normal insight. *Id.* As for episodes of decompensation, Defendant states that Plaintiff never suffered from an episode of decompensation of extended duration. *Id.*

Defendant asserts that rather than challenging the ALJ's findings under the special technique or the evidence supporting the special technique findings, Plaintiff challenges the ALJ's decision on the basis of the medical opinion evidence. ECF Dkt. #15 at 9. Continuing, Defendant states that ALJ's analysis of Dr. Groneck's opinion was consistent with the rules for assessing medical opinions found at 20 C.F.R. § 404.1527(c), which permit the ALJ to assign less weight to non-treating doctors that submit opinions that are inconsistent with other evidence in the record. *Id.* at 10. Defendant also avers that the opinions of Dr. Steiger and Dr. Lai, the state-agency reviewers, explicitly assigned weight to Dr. Groneck's opinion, and since Dr. Groneck opinion was equivocal and unsupported, the ALJ was under no obligation to adopt the opinions of Dr. Steiger and Dr. Lai. *Id.* at 11.

Next, Defendant states that Plaintiff admits that she did not treat with a psychiatrist and that the lack of specialist medical care treatment was an appropriate factor for the ALJ to consider when analyzing the work-related impact of Plaintiff's mental impairments. ECF Dkt. #15 at 12. Defendant states that while Plaintiff did complain of depression and received medications from her

main doctors, these factors fall short of her burden to establish that she had work-related restrictions. *Id.* Finally, Defendant states that there was no reason for the ALJ to have discussed Plaintiff's non-severe impairments beyond step two and that the only reason the ALJ may need to consider a non-severe impairment beyond step two was in combination with another impairment. *Id.* at 12-13. Defendant states that Plaintiff has not offered any explanation for any particular combination of her severe impairments with depression and anxiety that would cause work-related limitations, and, moreover, that the ALJ did consider her depression and anxiety beyond step two when addressing her credibility. *Id.* at 13.

Plaintiff has not met her burden to show that she had a medically determinable impairment that significantly limited her ability to perform basic work activities. *See* 20 C.F.R. § 404.1521. The ALJ properly evaluated Plaintiff's mental impairments and determined that none of the mental impairments were severe. In the decision, the ALJ stated:

> [Plaintiff's] medically determinable impairments of depression and anxiety considered singly and in combination, do not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and are therefore nonsevere.

Tr. at 26. Continuing, the ALJ explained that the four broad functional areas for evaluating mental disorders were considered. *Id.* The ALJ proceeded to find that Plaintiff had no limitation in the area of activities of daily living and indicated that she: made breakfast; cared for her mother; cleaned dishes; washed laundry; cared for her cat; prepared meals daily; cleaned the kitchen; drove; shopped in stores; paid bills; read; gardened; and shopped for antiques. *Id.*

Regarding social functioning, the ALJ found that Plaintiff had mild limitation. Tr. at 26. The ALJ stated that Plaintiff: met others for lunch; went to the farmer's market and library; got along fine with authority; was never fired or laid off for problems interacting with others; quit her job because her work was not appreciated; reported no mental health treatment and did not have suicidal ideation; and had good eye contact. *Id.* As for the area of concentration, persistence, or pace, the ALJ found that Plaintiff had average to high-average intelligence, good memory, coherent thought, and normal insight and judgment. *Id.* The ALJ also stated that the record did not show counseling, therapy, or psychiatric treatment. *Id.* Additionally, the ALJ determined that Plaintiff

had not experienced any episodes of decompensation of extended duration. After making the above findings, which the ALJ supported with citations to the record, the ALJ stated:

> Because [Plaintiff's] medically determinable mental impairments cause no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, they are nonsevere (20 CFR 404.1520a(d)(1) and 416.920a(d)(1)).

Tr. at 26.

Plaintiff asserts that step two is a *de minimis* hurdle in the disability determination process and that "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." ECF Dkt. #12 at 9 (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)). Continuing, Plaintiff states that "the purpose of this very low evidentiary hurdle is to 'screen out claims that are totally groundless'" and that the dismissal of a disability claim at step two based on medical evidence alone is "exceptional." *Id.* (quoting *Higgs*, 880 F.2d at 863).

In *Higgs*, the Sixth Circuit explained:

> Under the prevailing *de minimis* view, an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience.
>
> Mrs. Higgs also correctly notes that this lenient interpretation of the severity requirement in part represents the courts' response to the Secretary's questionable practice in the early 1980s of using the step two regulation to deny meritorious disability claims without proper vocational analysis.
>
> In light of these legal principles and recent history, it is now plain that in the vast majority of cases a disability claim may not be dismissed without consideration of the claimant's individual vocational situation. Nevertheless, Congress has approved the threshold dismissal of claims obviously lacking medical merit, because in such cases the medical evidence demonstrates no reason to consider age, education, and experience. In other words, as this court has recognized, the severity requirement may still be employed as an administrative convenience to screen out claims that are totally groundless solely from a medical standpoint.

880 F.2d at 862-63 (internal citations omitted).

In the instant case, the ALJ did not rely on step two of the sequential evaluation to dismiss the case without further consideration. Rather, the ALJ found that Plaintiff had severe impairments at step two of the sequential evaluation, namely, recurrent pericardial effusion, degenerative disc disease, fibromyalgia, hypertension, and headaches, and then continued with the remainder of the

sequential evaluation. Tr. at 25. As stated by the Sixth Circuit in *Higgs*, an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience. *Higgs*, 880 F.2d at 862. The ALJ made such findings in this case as to Plaintiff's mental impairments and supported those findings with substantial evidence. As stated above, the ALJ found: no restrictions in activities of daily living; mild limitation in social functioning; mild limitation in concentration, persistence, or pace; and no episodes of decompensation of extended duration. Tr. at 26.

Plaintiff also asserts that the medical sources that offered opinions found limitations consistent with a severe mental impairment. ECF Dkt. #12 at 9. The ALJ addressed these opinions, and stated:

> As for the mental opinion evidence, the state medical consultants found that [Plaintiff] could perform work with limited social interactions. However, their opinions are contradicted by the limited treatment in the record. Their opinions are contradicted by [Plaintiff's] normal functioning during her consultative examination and her denial of problems with authority or being fired or laid off because of problems interacting with others. Therefore, their opinions are granted little weight.

Tr. at 27 (internal citations omitted).[3] Plaintiff contends that the ALJ's rationale for rejecting the opinion evidence is insufficient. ECF Dkt. #12 at 11-12. Despite Plaintiff's contention, the ALJ cited substantial evidence when discounting the opinion evidence. The ALJ properly considered the lack of mental health treatment in the record and Plaintiff's denial of work-related problems. Further, while it may be disputed whether the opinion of Dr. Groneck, the consultative examiner, contained "normal" findings, the standard applied in this case is whether the ALJ supported the findings with substantial evidence.

In the instant case, the ALJ supported the findings with substantial evidence. While the state-agency reviewers and the consultative examiner that offered opinions in this case opined that Plaintiff could perform work with some limitations, the ALJ explained why those opinions were assigned little weight. Tr. at 27. Further, immediately prior to assigning the opinions little weight, the ALJ provided a comprehensive analysis of Plaintiff's activities of daily living, social

---

[3]The ALJ cited the opinions of Dr. Groneck, the consultative examiner, and Dr. Steiger and Dr. Lai, the state agency reviewers, when referring to "the state agency medical consultants." Tr. at 27.

functioning, concentration persistence, or pace, and episodes of decompensation. *Id.* at 26. Notably, when discussing Plaintiff's activities of daily living and social functioning, the ALJ relied heavily on Plaintiff's own Functional Report where she reported that she: made breakfast; cared for her mother; cleaned dishes; washed laundry; cared for her cat; prepared meals daily; cleaned the kitchen; drove; shopped in stores; paid bills; read; gardened; shopped for antiques; met others for lunch; went to the farmer's market; and visited the library. *Id.*

Plaintiff also contends that there is no evidence that the ALJ considered her depression and anxiety beyond step two of the sequential evaluation, and that these impairments are not mentioned anywhere else in the decision. ECF Dkt. #12 at 12. Despite this contention, Plaintiff fails to cite legal precedent requiring the ALJ to repeatedly state that the mental impairments, namely depression and anxiety, were considered throughout the decision. The ALJ found severe physical impairments and nonsevere mental impairments. Tr. at 25-26. When making the RFC finding, the ALJ indicated that the entire record was considered. *Id.* at 28. Plaintiff provides no reason as to why the ALJ failed to consider her nonsevere mental impairments beyond stating that the ALJ did not again mention the nonsevere mental impairments after finding them nonsevere. This argument is unconvincing as it presumes that the ALJ performed each step of the sequential evaluation without consideration of the prior steps with no basis for such a presumption. For the above stated reasons, the Court finds that the ALJ's assessment at step two of the sequential evaluation is supported by substantial evidence.

## **VI. CONCLUSION**

For the foregoing reasons, the Court AFFIRMS the decision of the ALJ and dismisses the instant case in its entirety with prejudice.

Date: August 29, 2018                  */s/George J. Limbert*
                                                          GEORGE J. LIMBERT
                                                          UNITED STATES MAGISTRATE JUDGE